UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X

TANESHA EDWARDS and JESSICA ORTEGA, on behalf
of themselves and all others similarly situated,

                                          Plaintiffs,

                  - against -

THE SERVICEMASTER COMPANY, LLC, d/b/a
ASSURED ENVIRONMENTS,
and RAMAC CORPORATION (US) d/b/a ASSURED
ENVIRONMENTS,

                                   Defendants.

----------------------------------------------------------------------- X

**Case No.: 20 Civ. 6124**

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Tanesha Edwards and Jessica Ortega (collectively the "Class Representatives" and "Plaintiffs"), on behalf of themselves and all other similarly situated, by and through their attorneys, Kessler Matura P.C., complaining of Defendants The ServiceMaster Company, LLC d/b/a Assured Environments ("ServiceMaster") and RAMAC Corporation (US) d/b/a Assured Environments ("RAMAC") (collectively "Defendants"), allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action seeking monetary damages and affirmative relief based upon Defendants' violations of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, the New York Labor Law ("NYLL"), and other appropriate rules, regulations, statutes and ordinances.

2.      As more fully described below, during the relevant time periods, Defendants willfully violated the FLSA and applicable state laws by failing to pay their non-exempt hourly Customer Service Specialists and/or Customer Service Representatives (collectively "CSSs"), including Plaintiffs and similarly situated employees, for all of their overtime hours worked based

upon its unlawful policies and practices.

3.      Defendants required their CSSs to work off-the-clock overtime hours and denied payment for all overtime hours worked.

4.      Starting in approximately 2017, Defendants started to compensate their CSSs for a few overtime hours *if* the work was completed from Defendants' office on a Saturday or Sunday.

5.      Starting in approximately August 2019, Defendants started to compensate their CSSs for overtime hours worked *if* the work was completed form Defendants' office on a Monday through Sunday basis and *if* Defendants approved the overtime recorded.

6.      Upon information and belief, on approximately December 2018, Defendant ServiceMaster acquired Defendant REMAC and continued to enforce the same unlawful pay practice of failing to pay their CSSs for all hours worked in excess of 40 per week

7.      Plaintiffs are entitled to the unpaid overtime wages for all hours worked in excess of 40 each workweek.

8.      Defendants failed to keep payroll records showing the accurate amount of hours worked by Plaintiffs and other similarly situated individuals.  Accordingly, Plaintiffs will provide a good faith based estimate of total hours worked through telephone records, e-mail records, text messages, Kronos logs, overtime approval requests, and other means.

9.      Plaintiffs seek permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all persons who are presently, or have at any time during the 3 years immediately preceding the filing of this action, worked for Defendants as a CSS.

## JURISDICTION & VENUE

10.    Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331, 1332, and 1337 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.    This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

12.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § § 2201 and 2202.

13.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendants are subject to personal jurisdiction in this district.  That at all times material hereto, Plaintiffs performed non-exempt duties for Defendants at their office located in New York County in the Southern District of New York, within the jurisdiction and venue of this Court.

14.    Defendants do business in the State of New York, within the Southern District of New York, maintaining their principal place of business at 45 Broadway, 10th Floor, New York, New York 10006.

15.    Accordingly, this action properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiff Tanesha Edwards*

16.    Plaintiff Tanesha Edwards is a resident of the County of Bronx, State of New York.

17.    At all times relevant to the Complaint, Plaintiff Tanesha Edwards was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

18.    Plaintiff Tanesha Edwards was employed by Defendants from in or about January 2014 through January 2020.

19.    From January 2014 until October 2018, Plaintiff Tanesha Edwards was employed by Defendants as a CSS in New York, New York.

20.    From November 2018 through January 2020, Plaintiff Tanesha Edwards was employed by Defendants as a Customer Service Specialist Leads ("CSS Lead") in New York, New York.

21.    Plaintiff Tanesha Edwards expressed her consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A, annexed hereto).

*Plaintiff Jessica Ortega*

22.    Plaintiff Jessica Ortega is a resident of the County of Queens, State of New York.

23.    At all times relevant to the Complaint, Plaintiff Jessica Ortega was an "employee" within the meaning of N.Y. Lab. Law § 190(2).

24.    Plaintiff Jessica Ortega was employed by Defendants as a CSS from in or about March 2014 through August 2018 in New York, New York.

4

**Defendant The ServiceMaster Company, LLC**

25.    Upon information and belief, Defendant ServiceMaster was and still is a foreign corporation authorized to do business in the State of New York.

26.    Upon information and belief, Defendant ServiceMaster's principal place of business was and still is located at 45 Broadway, 10th Floor, New York, New York, 10006.

27.    Upon information and belief, and at all times hereinafter mentioned, Defendant ServiceMaster was and still is engaged in the commercial pest control business and services property management, hospitality, retail, education, and food processing facilities.

28.    Upon and belief, Defendant ServiceMaster is the parent company for its subsidiaries who do business as Assured Environments, Terminix, Terminix Commercial, Merry Maids, ServiceMaster Clean, ServiceMaster Restore, AmeriSpec, Copesan, and Furniture Medic.

29.    At all times hereinafter mentioned, the activities of Defendant ServiceMaster constitutes an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

30.    At all relevant times, Defendant ServiceMaster maintained control, oversight, and direction over Plaintiffs and similarly situated employees terms of employment including payroll and other employment practices that applied to them.

31.    At all relevant times, Defendant ServiceMaster employed Plaintiffs and similarly situated employees within the meaning of the FLSA.  Defendant ServiceMaster has substantial control over Plaintiffs working conditions and the unlawful policies and practices alleged herein.

32.    At all times hereinafter mentioned, Defendant ServiceMaster employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved

5

in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

33.    Defendant ServiceMaster's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii) each year from in or about 2017 through the present.

34.    At all times hereinafter mentioned, Defendant ServiceMaster was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3), and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

### Defendant RAMAC CORPORATION (US)

35.    Upon information and belief, Defendant RAMAC was and still is a foreign corporation authorized to do business in the State of New York.

36.    Upon information and belief, Defendant RAMAC's principal place of business was and still is located at 45 Broadway, 10th Floor, New York, New York, 10006.

37.    Upon information and belief, and at all times hereinafter mentioned, Defendant RAMAC was and still is engaged in the commercial pest control business and services property management, hospitality, retail, education, and food processing facilities.

38.    Upon and belief, Defendant RAMAC was and is doing business as Assured Environments.

39.    At all times hereinafter mentioned, the activities of Defendant RAMAC constitutes an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

40.     At all relevant times, Defendant RAMAC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, terms of employment including payroll and other employment practices that applied to them.

41.     At all relevant times, Defendant RAMAC employed Plaintiffs and similarly situated employees within the meaning of the FLSA.  Defendant RAMAC has substantial control over Plaintiffs working conditions and the unlawful policies and practices alleged herein.

42.     At all times hereinafter mentioned, Defendant RAMAC employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

43.     Defendant RAMAC's annual gross volume of business was not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii) each year from in or about August 2017 through the present.

44.     At all times hereinafter mentioned, Defendant RAMAC was and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3), and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## FACTS COMMON TO ALL CLAIMS

### *The FLSA Collective & The Class*

45.    The proposed FLSA Collective is defined as follows:

All non-exempt hourly CSSs employed by Defendants in New York, however variously titled, between the date this Complaint is filed and the date of final judgment of in this action, who have not been paid for all overtime hours worked (the "FLSA Collective").

46.    The proposed Class is defined as follows:

All non-exempt hourly CSSs employed by Defendants in New York, however variously titled, between the date this Complaint is filed and the date of final judgment in this action, who have not been paid for all overtime hours worked.

### *Plaintiffs' Off-the-Clock Work*

47.    Defendants unlawfully required Plaintiffs and similarly situated employees to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least 1 and ½ times their regular hourly rate.

48.    At all relevant times, Plaintiffs and similarly situated employees were regularly scheduled and paid for a 40 hour workweek.

49.    Throughout the relevant period, Plaintiffs and similarly situated employees worked approximately 1 to 2 hours prior to the start of their scheduled shift and 2 to 3 hours after their scheduled shift each workday by responding to customer telephone calls and e-mails and were not compensated for this time.

50.    Plaintiffs and similarly situated CSSs completed non-exempt duties for Defendants that included but are not limited to: responding to customer service telephone calls and e-mails, responding to scheduling requests and complaints from customers, responding to text messages with Defendants' technicians in the field regarding scheduling and re-scheduling service calls,

entering service instructions for the technicians, providing reports and charts to customers regarding services completed and to-be completed services, responding to scheduling requests from Defendants' sales representatives to service new clients, routing approximately 13 to 15 of technicians' service calls each workday, scheduling follow-up services based on technician requests and routing these services, and scheduling and responding to emergency services on a 24 hours a day, 7 days a week basis.

51.    Throughout the relevant period, Plaintiffs and similarly situated employees responded to customer telephone calls and e-mails, routed technicians accordingly, and responded to technician texts for coverage each weekend for approximately 1 to 5 hours and were not compensated for this time.

52.    Throughout the relevant period, Defendants required Plaintiffs and similarly situated employees to be available to respond to customer telephone calls and e-mails on a 24 hour, 7 days a week basis as Defendants typically sold the pest control services to their customers by guaranteeing "same day service."

53.    Throughout the relevant period, Defendants maintain a "24/7/365 Accessibility" for their "internal call center", "tech coverage throughout area", and "on-line customer reporting." *See* www.assuredenvironments.com/assured-difference (last visited Aug. 5, 2020). Defendants' policy that "[w]hen customers call Assured they get a live employee on the phone – even during off-hour emergency situations" required Plaintiffs and their similarly situated employees to be working off-the-clock after their regularly scheduled hours. *See id.*

54.    At all relevant times, Defendants maintained an answering service to answer customer calls after 6 p.m. and during the weekends; however, Defendants' answering service would immediately email both the technician manager and CSS assigned to the region where the

9

service was requested. If the technician manager did not respond to the e-mail, the CSS was responsible for monitoring the email, responding to the email, assigning a technician to the requested service and/or calling the customer back to advise when the service would be completed.

55.    At all times prior to August 2019, Defendants did not maintain a record of Plaintiffs and similarly situated employees' time worked, and automatically assumed a 40 hour work week and a 1 hour break was taken each workday.

56.    After approximately August 2019, Defendants began to record a portion of Plaintiffs and similarly situated employees' time worked through a Kronos time-tracking system, but Defendants' new time-tracking policies only documented time worked when CSSs were in Defendants' office, and continued to fail to capture and pay for all overtime hours worked by Plaintiffs and similarly situated employees when they were not in Defendants' office.

57.    At all times after approximately August 2019, Defendants required Plaintiffs and similarly situated employees to receive approval prior to recording any overtime hours in Kronos.

58.    At all times after approximately August 2019, Defendants maintained a policy whereby Plaintiffs and similarly situated employees would not regularly receive approval for logging all overtime hours worked despite having already worked those hours, resulting in unpaid off-the-clock overtime work.

59.    Throughout the relevant period, Defendants maintained a mandatory 1 hour response time policy for all CSSs if customers made an inquiry between the hours of 8 a.m. and 6 p.m. on a Monday to Friday basis.  Plaintiffs and similarly situated employees were required to adhere to this policy, making it difficult for them to take a 1 hour lunch break, start their workday at 9 a.m., or end promptly at 6 p.m.

60.    Pursuant to these policies and procedures, Defendants failed to record all of the hours worked by Plaintiffs and similarly situated employees, thereby resulting in the failure to pay overtime in violation of the FLSA and NYLL.

61.    These policies and procedures also resulted in the failure to pay non-overtime wages in violation of the NYLL.

62.    During most workweeks from approximately January 2014 through October 2018, while employed as a CSS for Defendants, Plaintiff Tanesha Edwards worked approximately 74 hours per week and regularly did not take a break for lunch.

63.    While working off-the-clock, Plaintiff Edwards performed her usual duties as an hourly paid CSS, such as customer service, responding to scheduling requests and complaints from customers, responding to text messages with Defendants' technicians in the field regarding scheduling and re-scheduling services, responding to scheduling requests from Defendants' sales representatives to service new clients, routing approximately 13 to 15 of Defendants' technicians service calls each workday, scheduling follow-up services based on technician requests and routing them, and scheduling services on a 24 hour/7 day a week basis.

64.    Additionally, if a Defendants' field technician called out sick at night or early in the morning, Plaintiff Edwards was responsible as a CSS to re-route the technicians pre-scheduled appointments to other technicians.  This was typically completed either after 8 p.m. or at approximately 7 a.m. in the morning on any given day.

65.    For example, in approximately January and February 2018, Plaintiff Edwards, in addition to her usual CSS duties, had to integrate new accounts Defendants obtained from Copesan in the computer system, code the services, and assign them to technicians.  During these specific workweeks, Plaintiff Edwards worked at least 20 overtime hours without overtime pay.

11

66.     During most workweeks from approximately March 2014 through August 2018, while employed as a CSS for Defendant, Plaintiff Jessica Ortega worked approximately 60 hours per week and regularly did not take a break for lunch.

67.     While working off-the-clock Plaintiff Ortega performed her usual duties as an hourly paid CSS, such as customer service, responding to scheduling requests and complaints from customers, responding to text messages with Defendants' technicians in the field regarding scheduling and re-scheduling services, responding to scheduling requests from Defendants' sales representatives to service new clients, routing approximately 13 to 15 of Defendants' technicians service calls each workday, scheduling follow-up services based on technician requests and routing them, and scheduling services on a 24 hour/7 day a week basis.

68.     For example, between April and August of each year Plaintiff Ortega worked for Defendants, additional hours of overtime were worked because of a higher volume of calls Plaintiff Ortega would receive from Defendants' customers due to higher rates of infestations of ants, roaches, and mosquitos in the warmer months.  During April through August of each year, Plaintiff Ortega regularly 60 hours each week and did not receive overtime pay for all of these hours worked.

69.     Plaintiff Ortega worked on Defendants' St. John's University account.  Servicing this client required additional time in the summer months prior to new students entering in the fall semester, requiring Plaintiff Ortega to regularly respond to same-day service requests as was promised by Defendants.

70.     Plaintiff Ortega also handled several Northwell Health's clinics in Nassau County for Defendants, and regardless of the hour or day of the week, Plaintiff Ortega had to immediately respond to calls from this client and dispatch as well as route a technician for the requested service.

12

*Plaintiff Edward's Misclassification Claim*

71.     From approximately November 2018 through January 2020, Plaintiff Edwards worked for Defendants as a CSS Lead.

72.     Defendants misclassified Plaintiff Edwards' CSS Lead position as exempt from the protections of the FLSA and NYLL.

73.     Plaintiff Edwards completed primarily non-exempt duties as a CSS Lead, including her typical duties as a CSS in addition to reviewing CSS time sheets, and training CSSs in their roles.

74.     Plaintiff Edwards was paid a salary by Defendants from approximately November 2018 through January 2020, and did not receive overtime pay for hours worked over 40 per week.

75.     While employed as a CSS Lead, Plaintiff Edwards consistently worked over 40 hours per week without receiving premium pay for any hours worked over 40 per workweek.

76.     During most workweeks from approximately November 2018 through January 2020, while employed as a CSS Lead for Defendants, Plaintiff Edwards worked approximately 60 hours per week.

77.     Throughout Plaintiff Edward's employment for Defendants as a CSS Lead, Edwards was required to be paid overtime pay at the statutory rate of one and one-half her regular rate of pay after she worked 40 hours in a workweek for Defendants.

78.     Throughout Plaintiff Edward's employment for Defendants as a CSS Lead, Defendants did not keep accurate records of hours worked by Plaintiff Edwards.

79.     Throughout Plaintiff Edward's employment for Defendants as a CSS Lead, Defendants failed to furnish Plaintiff Edwards with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

*Plaintiffs' Inaccurate Wage Statements*

80.    Defendants did not provide Plaintiffs with an accurate wage statement.

81.    The paystubs issued to Plaintiffs regularly lacked the actual amount of overtime hours worked.

*Defendants' Off-the-Clock Violations*

82.    Plaintiffs, the proposed FLSA Collective members, the proposed Class members worked as non-exempt classified CSSs for Defendants.

83.    Defendants are aware that Plaintiffs, the proposed FLSA Collective, and the proposed Class worked off-the-clock overtime hours.  But, Defendants failed and continues to fail to pay them all of their overtime compensation by failing to credit them for all of the hours they work over 40 in a workweek and suffering or permitting Plaintiffs, the proposed FLSA Collective, and the proposed Class to work off-the-clock hours, during which they are performed their CSS duties.

84.    Defendants failed to maintain contemporaneous and accurate records of time worked by Plaintiffs, the proposed FLSA Collective members, the proposed Class members.

85.    Starting in approximately August 2017, Defendants began to compensate Plaintiffs, the proposed FLSA Collective, and the proposed Class for overtime work if it was completed at Defendants' office during a Saturday or Sunday.

86.    Starting in approximately August 2019, Defendants began to maintain time records for all of their non-exempt hourly CSSs in New York through a Kronos program.

87.    However, starting in approximately August 2019, Defendants Kronos time records fail to accurately reflect all of Plaintiffs' hours worked, based upon Defendants' policies and

procedures of only recording the time worked if CSSs completed that work from Defendants'
office and only paying for that overtime worked *if* it was approved.

88.    While Defendants occasionally may have paid Plaintiffs, the proposed FLSA
Collective, and the proposed Class for *some* overtime hours worked, Defendants failed to pay
Plaintiffs, the proposed FLSA Collective, and the proposed Class for *all* of their overtime hours
worked because it did not pay them for hours worked prior to and after their regularly scheduled
shift.

89.    Based upon Defendants' policies and procedures, Defendants failed to keep
accurate records of hours worked by Plaintiffs.

90.    Defendants' failure to pay Plaintiffs, the proposed FLSA Collective, and the
proposed Class for all hours worked was due to a corporate policy to limit labor expenditures and
preserve corporate profits.

### *Defendants' Misclassification Violations*

91.    Defendants are aware that Plaintiff Edwards primarily completed non-exempt
duties in her role as a CSS Lead.  But, Defendants failed and to pay Edwards for her overtime
compensation by misclassifying the CSS Lead position as exempt from overtime.

92.    Defendants failed to complete, accurate, and proper time records for Plaintiff
Edwards while she was employed as a CSS Lead.

93.    Defendants' failure to pay Plaintiff Edwards overtime pay as a CSS Lead was due
to a corporate policy to limit labor expenditures and preserve corporate profits.

## FLSA COLLECTIVE ACTION ALLEGATIONS

94.    Plaintiffs bring the First Cause of Action, pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of themselves and the proposed FLSA Collective.

95.    All of the work that Plaintiffs and the proposed FLSA Collective performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the proposed FLSA Collective have performed.

96.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the proposed FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

      a.    willfully failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for all of the hours that they worked for Defendants in excess of 40 hours per workweek; and

      b.    willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for Defendants.

97.    Defendants are aware or should have been aware that federal law required they pay Plaintiffs and members of the FLSA Collective an overtime premium for all hours worked in excess of 40 per workweek.

98.    Plaintiffs and the FLSA Collective all perform or performed the similar duties of Defendants' CSSs in New York.

99.    Plaintiffs and the FLSA Collective all were compensated on an hourly basis.

100.    Plaintiffs and the FLSA Collective all were subject to the same employment policies, procedures, and practices as centrally disseminated by Defendants.

101.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

16

102.     The FLSA Collective is readily identifiable and locatable through the use of the Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## CLASS ACTION ALLEGATIONS

103.     Plaintiffs bring the Second and Third Causes of Action, pursuant to NYLL and Federal Rule of Civil Procedure 23 on behalf of themselves and the proposed Class.

104.     All of the work that Plaintiffs and the proposed Class performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the proposed Class performed.

105.     The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

106.     Numerosity: Upon information and belief, the size of the Class is at least 50 individuals.

107.     Existence and Predominance of Common Questions: Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually, including without limitation:

      a.     whether Defendants failed to pay proper compensation for all work-hours and violated N.Y. Lab. Law, Articles 6 and 19, and the supporting New York State Department of Labor regulations;

b.    whether Defendants failed to keep accurate time records for all hours worked by Plaintiffs and the Class;

c.    whether Defendants failed to furnish Plaintiffs and the Class with an accurate statement of, inter alia, wages, hours worked, and rates paid as required by N.Y. Lab. Law § 195;

d.    the nature and extent of the Class-wide injury and the appropriate measure of damages sustained by Plaintiffs and the Class;

e.    whether Defendants acted willfully or with reckless disregarding in its failure to pay Plaintiffs and the Class; and

f.    whether Defendants lack a good faith basis to believe their failure to pay Plaintiffs overtime wages complied with the NYLL.

108.    <u>Typicality</u>:  The Class Representatives' claims are typical of those of the Class. The Class Representatives and the other Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  The Class Representatives' job duties are typical of those of the class members.

109.    <u>Adequacy</u>:  Plaintiffs, as the "Class Representatives," fairly and adequately protects the interests of the Class and have no interests antagonistic to the class.  The Class Representatives are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

110.    <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies,

practices, and procedures.  Although the relative damages suffered by individual members of the

Class are not *de minimis*, such damages are small compared to the expense and burden of

individual prosecution of this litigation.  In addition, class treatment is superior because it will

obviate the need for unduly duplicative litigation that might result in inconsistent judgments about

Defendants' practices.

111.    This action is properly maintainable as a class action under Rule 23 of the Federal

Rules of Civil Procedure.

### FIRST CAUSE OF ACTION
**FLSA – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

112.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

113.    Defendants employed Plaintiffs and the FLSA Collective for workweeks longer

than 40 hours and willfully failed to compensate Plaintiffs and the FLSA Collective for the time

worked in excess of 40 hours per week, at a rate of at least 1 and 1/2 times the regular hourly rate,

in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

114.    The complete records concerning the number of days and hours worked by

Plaintiffs and the FLSA Collective are in the exclusive possession and control of Defendants, and

as such, Plaintiffs are unable to state at this time the exact amount due and owing to them.

115.    Plaintiffs expressed their consent to make these claims against Defendants filing a

written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit "A," annexed hereto).

116.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs

and the FLSA Collective have incurred damages thereby and Defendants are indebted to them in

the amount of the unpaid overtime compensation, together with interest and liquidated damages,

in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime
### (Brought on behalf of Plaintiffs and the Class)

117.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

118.    Defendants employed Plaintiffs and the Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs for the time worked in excess of 40 hours per week, at a rate of at least 1 and 1/2 times the regular hourly rate, in violation of the requirements of the NYLL.

119.    By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

120.    Defendants have a policy and practice of refusing to pay all overtime compensation to Plaintiffs and the Class.

121.    Defendants' failure to pay overtime compensation to Plaintiffs and the Class was willful within the meaning of N.Y. Lab. Law § 663.

122.    Defendants' failure to pay overtime compensation lacked a good faith basis within the meaning of N.Y. Lab. Law § 663.

123.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and the Class have incurred damages thereby and Defendants are indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

124.    Plaintiffs and the Class seek recovery of liquidated damages, attorneys' fees and costs to be paid by the Defendants as provided by the NYLL.

## THIRD CAUSE OF ACTION
### NYLL – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the Class)

125.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

126.    Defendants have willfully failed to supply Plaintiffs and the Class with statements of wages as required by NYLL, Article 6, § 195(3), containing the accurate overtime rate of pay.

127.    Through their knowing or intentional failure to provide Plaintiffs and the Class with accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

128.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the Class are entitled to statutory penalties, prior to February 2015, of $100 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of up to $2,500, and, after February 2015, $250 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of up to $5,000, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all others similarly situated and individually, seek for the following relief:

A.      Certification of this action as a collective action under the FLSA, pursuant to 29 U.S.C. § 216(b), and as a class action under Rule 23;

B.      That, at the earliest time possible, Plaintiffs be allowed to give notice, or that the Court issue such notice, to all members of the Collective. Such notice should inform them that this action has been filed, of the nature of this action, and of their right to join this lawsuit, among other things;

C.      Designation of Plaintiffs as representatives of the Collective and Class;

D.      Designation of Plaintiffs' Counsel as Counsel for the Collective and Class;

E.      A declaratory judgment that Defendants have violated the FLSA and NYLL;

F.      Unpaid wages and overtime pay and an equal amount as liquidated damages, pursuant to the FLSA and the NYLL;

G.      Reasonable service awards to compensate Plaintiffs for the time they have spent and will spend attempting to recover wages for the Collective and Class and for the risks they take in doing so;

H.      Statutory damages for Defendants' violations of the recordkeeping requirements pursuant to N.Y. Lab. Law § 195, reasonable attorneys' fees, costs and injunctive and declaratory relief as provided by N.Y. Lab. Law § 198;

I.      Attorneys' fees, costs, and expenses;

J.      Prejudgment and post-judgment interest, as provided by law; and

K.     Such other relief as the Court may deem just and proper.

Dated: Melville, New York
        August 5, 2020

Respectfully submitted,

By:     */s/ Marijana Matura*
        Marijana Matura

**KESSLER MATURA P.C.**
Troy L. Kessler
Marijana Matura
Tana Forrester
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100

*Attorneys for Plaintiffs and the Putative*
*FLSA Collective and Rule 23 Classes*